Earl BERRY, Plaintiff-Appellant,

v.

Jimmy McLEMORE, et al., Defendants,

Town of Maben, Mississippi and New
Hampshire Insurance Co.,
Garnishee-Appellees.

No. 85–4421.

United States Court of Appeals,
Fifth Circuit.

July 28, 1986.

Jim Waide, Estes & Waide, Tupelo, Miss.,
for plaintiff-appellant.

H. Russell Rogers, Ward & Rogers
Starkville, Miss., for New Hampshire Ins.
Co.

Thomas Coleman, Ackerman, Miss., for
Maben.

Before WILLIAMS, JOLLY, and
HIGGINBOTHAM, Circuit Judges.

OPINION

E. GRADY JOLLY, Circuit Judge:

In 1982, as a result of a district court
judgment and this court's decision, James

McLemore was held liable to Earl Berry for $10,000 in damages plus attorney and expert witness fees. *See Berry v. McLemore*, 670 F.2d 30 (5th Cir.1982) (*Berry I*). When McLemore failed to pay this judgment, Berry filed a suggestion for a writ of garnishment against the Town of Maben, Mississippi (Town), McLemore's employer at the time of the incident giving rise to McLemore's liability, and the New Hampshire Insurance Co. (NHI), the insurer of the Town at the time of the incident.

After hearing evidence, the district court granted directed verdicts for NHI and the Town. Berry has appealed these verdicts. After reviewing our jurisdiction in these actions, we conclude that there is no federal jurisdiction over Berry's claims against the Town, and thus we vacate the directed verdict for the Town and dismiss that action. Although we do have jurisdiction over Berry's claims against NHI, we hold that the insurance policy issued by NHI to the Town does not cover the incident in question, and thus affirm the directed verdict for NHI.

I

This is the second time this case has come before our court. The facts of the first action, as recited by this court in *Berry I*, are as follows:

The Town of Maben hired McLemore as a police officer in April 1978, and promoted him to Chief of Police on a probationary basis one year later. Shortly after his promotion, McLemore attempted to make a custodial arrest of Berry for an alleged traffic offense. When Berry protested his innocence, McLemore became angry and hit Berry four or five times about the face. Berry responded by striking the officer, whereupon McLemore pulled his gun and shot Berry through the stomach and arm. As Berry turned and fled, McLemore again fired at him and a ricochet entered the back of Berry's neck.

In January 1980 Berry brought suit both under 42 U.S.C. § 1983 and directly under the Constitution, alleging that McLemore was liable to him for violating his constitutional rights, and that the Town of Maben was also liable both vicariously and directly for the constitutional deprivations perpetrated by McLemore. Berry's claims against McLemore and the Town were tried before a jury. At the conclusion of plaintiff's case, the district court directed a verdict in favor of the Town. The jury returned a verdict against McLemore in the amount of $5,000 compensatory damages and $5,000 punitive damages, and the court entered judgment accordingly. The court assessed McLemore, but not the Town, $5,000 for Berry's attorneys' fees and disallowed as an item of costs the $750 fee of an expert medical witness who testified on Berry's behalf.

*Berry I*, 670 F.2d at 31. Berry appealed that portion of the district court judgment concerning the Town and the assessment of expert witness fees. *Id.* at 32. This court affirmed the directed verdict dismissing the Town, but reversed the district court's assessment of expert witness fees, holding McLemore liable for the fees. *Id.* at 33–34.

When McLemore failed to pay the judgment by December 1982, Berry filed this present action as a "suggestion of garnishment" against the Town for the amount of the judgment, costs and attorneys' fees awarded in the initial suit. The suggestion alleged that the Town was indebted to McLemore for two reasons. First, Berry claims that immediately after he filed his original action, Town officials informed McLemore that the Town would pay any judgment obtained by Berry, and that, in reliance on this representation, McLemore failed to obtain independent counsel for the trial. Second, Berry contends that the Town provided McLemore with counsel who had a conflict of interest in representing McLemore,[1] and who, in fact, acted contrary to McLemore's interests. In Sep-

---

1. The Town allowed its counsel to represent McLemore at trial instead of retaining independent outside counsel.

tember 1983, Berry filed another "suggestion of garnishment" against NHI, the liability insurer of the Town. Berry alleged that NHI was liable to McLemore because it had breached its duty to defend McLemore, an insured under the Town's insurance policy issued by NHI, and to indemnify him against the judgment.

In June 1985, a jury trial was conducted in federal district court on Berry's garnishment claims. At trial, with respect to the garnishment proceeding against NHI, McLemore testified that he intended only to fire warning shots at Berry. Berry asserted that McLemore's lack of intent to shoot Berry brought the incident under the terms of the NHI policy. With respect to the garnishment proceeding against the Town, McLemore testified that the Town had promised to pay any judgment against him, and that his counsel in *Berry I*, provided by the Town, had acted against McLemore's interest by seeking a directed verdict for the Town, claiming McLemore's training was adequate, by failing to appeal, and by failing to confer with him. Berry claims that these acts caused the Town to be liable to McLemore for the amount of the judgment found against McLemore in *Berry I*.

At the close of the evidence, the judge granted directed verdicts for both NHI and the Town. The district court held that NHI did not wrongfully refuse to defend McLemore because the complaint in *Berry I*, taken as a whole, stated a cause of action for an intentional harm by McLemore, and the policy only insured against negligence. Thus, the district court ruled that the NHI policy did not cover the Berry-McLemore incident. As an alternative ground, the district court held that the jury findings in *Berry I* collaterally estopped Berry from holding NHI liable in the garnishment action because the jury found liability against McLemore on intentional grounds, which again precluded application of the policy.

The district court further held that Berry had not properly raised the issue of garnishment against the Town. Applying Mississippi law, the district court held that

Berry could not recover on a writ of garnishment from the Town because McLemore had not obtained a judgment against the Town for the amount allegedly owed. Since McLemore had not obtained such a judgment against the Town, the district court directed a verdict for the Town. Berry filed a timely notice of appeal challenging both directed verdicts.

II

On appeal, Berry contends that the district court erred in directing a verdict for NHI because NHI wrongfully refused to defend McLemore in *Berry I*; because the jury should have been allowed to determine whether the insurance policy covered the incident between McLemore and Berry; and because McLemore was covered under the policy for the purposes of indemnifying him against the judgment in *Berry I*. Berry also argues that the district court erred in directing a verdict for the Town because under Mississippi law there was no need to obtain a judgment against the Town before a writ of garnishment could be issued.

After reviewing the facts of this case, we find no need to respond to each of Berry's contentions. First, from a review of the procedural posture and facts of the garnishment actions before this court, we conclude that there is no federal jurisdiction over the action by Berry against the Town. Since there is no federal jurisdiction, we vacate the directed verdict for the Town and dismiss this action without reaching the merits of Berry's arguments concerning the Mississippi law of garnishments. Second, we note that the threshold question in Berry's claim against NHI is whether the insurance policy covered the incident between McLemore and Berry. After reviewing the terms of the policy and the applicable Mississippi case law, we conclude that the district court properly determined that the policy was inapplicable. Since the NHI policy does not cover the Berry-McLemore incident, we find no reason to consider Berry's other contentions against NHI.

## III

### A.

#### (1)

The first consideration of this court is whether we have jurisdiction over the claims before us. At the outset, we note that garnishment actions against third parties[2] are construed as independent actions from the primary action which established the judgment debt. *Butler v. Polk*, 592 F.2d 1293, 1295 (5th Cir.1979). Berry vigorously contends otherwise, asserting that this court has ancillary jurisdiction over the present action as necessary to enforce the judgment rendered in *Berry I.*

It is black letter law that:

the jurisdiction of a court is not exhausted by the rendition of judgment, but continues until that judgment is satisfied.... Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.

*Riggs v. Johnson County*, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1868). This post-judgment jurisdiction, however, is limited to those actions that a court may take in that same action. For instance, in *Interstate Commerce Commission v. Central of Georgia Railway Co.*, 429 U.S. 968, 97 S.Ct. 474, 50 L.Ed.2d 578 (1976), a case Berry strongly relies upon, the Supreme Court summarily affirmed a three-judge district court's grant of a motion to require the Interstate Commerce Commission to comply with a previously issued order against it in the same case. That case is distinguishable from the facts before us since the motion to enforce the previous judgment was filed as part of the original

action before the three-judge court, and the relief only sought enforcement against the defendant who was bound by that judgment.

In the instant case, enforcement is sought against third parties, who were strangers to the court's judgment in *Berry I.* The writ of garnishment, under the clear precedent of this court, is an action separate and independent from the action giving rise to the judgment debt. *Butler*, 592 F.2d 1293. Berry must have known this, as he did not file the suggestion of garnishment as a post-judgment motion to, or writ of execution to the judgment in, *Berry I*, but rather instituted new proceedings. Moreover, the basis of the garnishment proceedings and the basis of the claim against McLemore are different. In *Berry I*, Berry's claim arose out of an alleged violation of his constitutional rights; in the instant garnishment proceedings, Berry's claims allegedly arise out of contract, that is the alleged oral agreement between the Town and McLemore and the written policy of insurance between NHI and the Town, of which McLemore is claimed to be an insured. In other words, the alleged obligations of the Town and NHI are completely independent of the primary judgment against McLemore. We can find no case where a court held that it had ancillary jurisdiction to consider claims in a *new and independent action* merely because the second action sought to satisfy or give additional meaning to an earlier judgment. In any event, we are bound by our own precedent, and conclude that this court's ancillary jurisdiction to enforce its judgment does not extend to these garnishment actions. *Cf. Blackburn Truck Lines, Inc. v. Francis*, 723 F.2d 730, 733 n. 1 (9th Cir.1984) (jurisdiction held to exist in an action to pierce the corporate veil to reach

---

**2.** As used in *Butler*, third parties are those persons who were not parties to the original action. Although the Town was originally a defendant in *Berry I*, the district court directed a verdict in its favor and dismissed any claims against it. As the Town incurred no liability to Berry, the judgment creditor, the Town is a third party in this garnishment proceeding as regards the orig-

inal judgment. Thus, under *Butler, Berry I* and the garnishment proceedings between Berry and the Town are independent actions requiring separate bases for federal jurisdiction.

Since NHI was not a party in *Berry I*, this question does not arise in the garnishment proceedings between Berry and NHI.

the owners of bankrupt judgment debtor corporations in part because "we do not view this suit as separate and apart from the original judgment"); *McKee-Berger-Mansueto, Inc. v. Board of Education,* 691 F.2d 828 (7th Cir.1982) (court had continuing jurisdiction to adjudicate conflicting claims to monies owed as a result of an adverse judgment).

Thus, since any jurisdiction that this court had in *Berry I* is not available to this court in the instant actions, we must find an independent basis for federal jurisdiction over these garnishment actions or else dismiss the suggestions of garnishment.

(2)

Next we note that the garnishment proceeding against the Town and the garnishment proceeding against NHI are actions separate and independent from each other, and were filed as separate actions. In the garnishment proceedings, Berry's pleadings assert independent grounds for liability for both the Town and NHI, and "[t]here are no indications that any parallel or shared liability was contemplated." *Butler,* 592 F.2d at 1296. Thus, we must examine independent bases for federal jurisdiction for each of the actions between Berry and NHI and Berry and the Town.

Federal jurisdiction over the action between Berry and NHI lies in this court's jurisdiction over cases and controversies arising between citizens of different states. 28 U.S.C. § 1332. Berry is a citizen of Mississippi; NHI is neither a resident nor a citizen of Mississippi. As this diversity is a sufficient basis for federal jurisdiction, this court will consider Berry's challenge to the directed verdict for NHI on the merits.

■ We can find no basis, however, for federal jurisdiction in the Berry-Town garnishment proceeding. First, subject matter jurisdiction as defined in 28 U.S.C. § 1331, does not exist, because an action for a writ of garnishment arises from state law, not federal law. *See* Miss. Code Ann. § 11–35–1, *et seq.,* (1972). Second, there is no diversity jurisdiction in this case because Berry, the Town and McLemore are all citizens of Mississippi. *See* 28 U.S.C. § 1332. As there is no basis for federal jurisdiction over the garnishment action between Berry and the Town, we dismiss this action without consideration of the merits of Berry's claims. *See Marshall v. Gibson's Products, Inc.,* 584 F.2d 668 (5th Cir.1978). Since the district court was without jurisdiction, it was without power to grant the directed verdict in favor of the Town. Thus, the directed verdict for the Town is vacated and the garnishment proceeding against the Town is dismissed.

B.

■ We now turn to the question whether the McLemore-Berry incident was covered by the terms of the insurance policy between NHI and the Town. The relevant language in the NHI policy states:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of A. Bodily injury or B. Property Damage, to which this insurance applies, *caused by an occurrence,* and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements ... (emphasis added).

The policy defines an "occurrence" as "[a]n accident, including continuous and repeated exposure to conditions, which result[s] in bodily injury or property damage neither expected [n]or intended from the standpoint of the insured." The question before this court, then, is whether the Berry-

McLemore incident was an "occurrence" as that term is used in the policy.[3]

In *Allstate Insurance Co. v. Moulton,* 464 So.2d 507, 509 (Miss.1985), the Supreme Court of Mississippi interpreted a nearly identical policy definition of "occurrence" to mean that an act fell outside the terms of the policy if "whether prompted by negligence or malice, (1) [defendant]'s acts were committed consciously and deliberately, without the unexpected intervention of any third force, and (2) the likely (and actual) effect of those acts was well within [defendant]'s foresight and anticipation."[4] Applying this definition to the instant case, we find that McLemore's acts were not an occurrence and are not covered by the terms of the insurance policy.

To determine whether McLemore's acts were "committed consciously and deliberately" we initially examine the charges Berry alleged and proved against McLemore in *Berry I.*[5] The complaint filed by Berry in *Berry I* charges McLemore with committing numerous *intentional* torts. Paragraph 3 of the complaint reads in pertinent part:

> Upon exiting the vehicle Plaintiff tried to explain to McLemore what had happened, but McLemore was not interested and when Plaintiff Berry hesitated in obeying McLemore's command to get into the police car, *the Defendant McLemore struck Berry violently in the face.* Plaintiff Berry then attempted to get into the police car, but *Defendant McLemore grabbed Berry's arm, twisting it severely and causing great pain.* Plaintiff Berry then broke loose from McLemore, turned around and struck McLemore in the face. *McLemore then drew his pistol and shot Plaintiff in the stomach.* Plaintiff, in fear for his life, turned to run whereupon *the Defendant McLemore fired again,* a ricochet striking Plaintiff in the back (emphasis added).[6]

---

**3.** Although Berry claims that McLemore was an insured under the policy because the policy purports to insure policemen, we find it unnecessary to determine this issue since the incident is not an occurrence under the terms of the policy.

**4.** Berry vigorously argues that this interpretation of "occurrence" does not apply in the instant case because the facts before the Mississippi court and those before this case are different. In *Allstate,* the insured had sworn out a complaint and subsequently testified against the plaintiff in a criminal case. When the criminal charges were dismissed, the plaintiff brought suit against the defendant alleging malicious prosecution. The defendant/insured notified her insurer of the litigation and requested the insurer's aid in defending the action. The insurer refused, contending that the defendant/insured's acts were not an "occurrence" under the terms of the policy. The Mississippi Supreme Court upheld the insurer's interpretation.

Berry contends that the facts of this case distinguish it from *Allstate.* Berry argues that "a complaint alleging malicious prosecution has not alleged any non-intentional injury; thus, there was no duty by the insurance company to defend. In this case, the harm complained of is not a prosecution, but a gun-shot wound. A person who has been 'maliciously prosecuted' has been intentionally injured. By contrast, a person who has been shot by a gun could be injured either intentionally, or unintentionally."

In the instant case, this distinction is of little importance. As we discuss, *see infra,* the question of intent does not relate to whether the defendant intended to harm the plaintiff but rather to whether the defendant intended to take the action that caused the harm. Although it is certainly possible to inflict a gun shot wound without intending to fire the weapon, in the instant case there is no dispute over the fact that McLemore intended to fire his weapon. Thus, Berry's contention that *Allstate* is not controlling is without merit, and we apply the holding of the Mississippi court to the instant case.

**5.** NHI contends that the jury in *Berry I* found that McLemore acted deliberately and unreasonably. Relying on this finding, NHI argues that Berry is either collaterally estopped or precluded by the doctrine of *res judicata* from arguing that these previously litigated facts were unintentional. We need not reach this specific issue, however, because the fact that McLemore intentionally fired his weapon is not in dispute in the case before us and is the primary fact controlling whether the incident was an occurrence. *See infra.*

**6.** In fact, Berry charges McLemore with negligent conduct only once in the entire complaint:

> Defendant's use of a deadly weapon (a .357 Magnum) against the unarmed Plaintiff constituted a use of unreasonable force in violation of United States Constitution Amendments 4, 8, and 14. It also constituted cruel and inhuman punishment in violation of United States Constitution Amendment 8. Fur-

These intentional torts constitute the primary allegations against McLemore and were fully supported by the testimony and evidence as found by the jury in *Berry I. See Berry I,* 670 F.2d at 31–32. In the case now before us, it is uncontested that McLemore intended to fire his gun; in other words, the discharge of the pistol was not an "accident," as referred to in the policy's definition of an "occurrence." Furthermore, there is no evidence or claim that Berry's injury resulted from the "unexpected intervention of any third force." It would thus clearly appear upon the allegations and evidence in both *Berry I* and this case that the incident was not an "occurrence" under the holding of *Moulton.*

To avoid this conclusion, Berry asserts that McLemore's testimony in this case that he intended to fire only warning shots raises a jury question of whether McLemore intended his acts to cause Berry's injury. We reject this contention, as the Mississippi Supreme Court rejected a similar contention in *Moulton.* The policy excludes coverage for intentional *acts.* The focus is, therefore, not on the harm caused, but upon the act that caused the harm. The act was the firing of the gun. The gunshot wound was the resulting harm.

Viewing McLemore's testimony in the light most favorable to Berry, *see Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc), we accept McLemore's testimony that he did not intend the consequences of his act, that is, harming Berry. There is no dispute, however, over the fact that McLemore intentionally discharged his weapon in Berry's direction and that the harm to Berry was foreseeable. As the intent to fire is the only fact significant to the legal determination of whether McLe-

more's act was intentional,[7] the district court properly granted NHI a directed verdict on the ground that the policy did not extend coverage to the acts in question.

## IV

Because there is no federal jurisdiction over Berry's claim against the Town, the district court's grant of directed verdict is vacated and this action is dismissed. Because we hold that, as a matter of law, the insurance policy between NHI and the Town did not cover the McLemore-Berry incident, the district court's grant of directed verdict for NHI is affirmed. Thus, the judgment of the district court is

AFFIRMED IN PART, DISMISSED IN PART.

---

thermore, it was summary punishment in violation of United States Constitution Amendment 14. Finally, *use of a deadly weapon under circumstances of this case was negligent conduct and wrongful conduct under the laws of the State of Mississippi* (emphasis added).

**7.** Berry does not argue that the harm resulting from McLemore's act was not the "likely (and actual) effect of [his] acts" nor that the harm was not "well within [McLemore's] foresight

and anticipation." *Allstate,* 464 So.2d at 509. It is understandable that this argument is not raised. McLemore does not deny that he shot in Berry's direction at close range at least twice and that Berry was wounded in the stomach, arm and back. Any reasonable person would realize that firing a gun in someone's direction at close range raises the likelihood that the person in the target range may be hit by the bullet.